**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PETER MANNING LLC, *et al.*,[1]<br><br>Debtor. | FOR PUBLICATION<br><br>Chapter 11 (Subchapter V)<br><br>Case No. 26- 12000 (JPM)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO EXTEND THE AUTOMATIC STAY TO PRINCIPAL OF THE DEBTORS**

***APPEARANCES:***

**WEINBERG ZAREH MALKIN & PRICE LLP**
*Attorneys for Debtors Peter Manning LLC and PM 850 Brooklyn LLC*
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
By: Terrence K. McLauglin
Donna M. Fiorelli
Adrienne Woods
Omid Zareh

**LOEB & LOEB LLP**
*Attorneys for 19-20 Bush Terminal Owner LP*
345 Park Avenue
New York, NY 10154
By: Bethany D. Simmons
Alexis Zobeideh

**AKERMAN LLP**
*Attorneys for 933 Broadway, LLC*
1251 Avenue of the Americas, 37th Floor
New York, NY 10019
By: Michael T. Carr
Scott M. Kessler
Mark S. Lichtenstein

[1] The last four digits of Debtors' federal tax identification numbers are: Peter Manning (5482) and PM 850 Brooklyn (6685).

**McGIVNEY KLUGER CLARK & INTOCCIA, P.C.**
*Attorneys for Wells Fargo Bank, National Association*
33 Whitehall Street, 16th Floor
New York, NY 10004
By: Peter A. Ragone

**UNITED STATES TRUSTEE**
*Office of the United States Trustee—Region 2*
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004
By: Shara C. Cornell

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
*Attorneys for Lever Style Limited*
1133 Westchester Avenue
Whie Plains, NY 10604
By: Marc J. Gross
James Terpak

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

This case presents the question of whether the Court should extend the automatic stay for a limited period of time to the non-debtor principal of the debtor who manages and oversees all aspects of the business of the debtor on a full-time daily basis (with only two other managers); who is now being sued by creditors under personal guarantees and financial instruments he extended on behalf of the debtor; who would be highly distracted from running the business and from working towards confirming the plan of reorganization by protracted litigation if the stay is not extended; and who may (or may not) be indemnified by the debtor for any judgments and attorney's fees spent in litigation. The Court finds that an extension of the automatic stay for a limited period of time to cover that litigation against the non-debtor principal is warranted under the facts of this case. Therefore, the motion to extend the automatic stay to the non-debtor principal is **GRANTED**.

## I. INTRODUCTION

This matter arises from the jointly administered Chapter 11 cases of the debtors Peter Manning LLC and PM 850 Brooklyn LLC (the "**Debtors**"). Before the Court is the Debtors' *Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**Motion**") dated October 6, 2026. (Dkt. No. 38). The Debtors seek entry of an order pursuant to 11 U.S.C. § 105(a) extending the automatic stay, imposed as to the Debtors by 11 U.S.C. § 362, to the Debtors' principal Mr. Jeff Hansen. Specifically, the Debtors seek an extension of the automatic stay to Mr. Hansen with respect to certain litigation arising out of personal guarantees and financial instruments executed by Mr. Hansen on behalf of the Debtors to creditors.

The Court held a hearing on the Motion on October 20, 2026 (the "**Hearing**"). At the conclusion of the Hearing, the Court took the Motion under advisement and temporarily

extended the automatic stay imposed by Section 362 to Mr. Hansen until the Court issued a final ruling on the Motion. On October 21, 2026, the Court entered an *Interim Order Temporarily Extending the Automatic Stay to the Debtors' Principal Jeff Hansen Pending Adjudication of Debtors' Motion to Extend the Automatic Stay*, which memorialized the Court's oral ruling at the conclusion of the Hearing (the "**Interim Order**"). (Dkt. No. 59).

For the reasons set forth below, the Motion is **GRANTED** and the automatic stay provided to the Debtors under Section 362(a) is extended to the Debtors' principal Mr. Jeff Hansen as to the litigation currently pending against Mr. Hansen, until the Debtors confirm a plan or, should the Debtors be unable to confirm a plan, until the dismissal or conversion of the Debtors' cases.

## II. BACKGROUND

Debtor Peter Manning LLC ("**Peter Manning**") is a New York limited liability company that "operates a direct-to-consumer menswear brand (d/b/a Peter Manning NYC) with showroom and fit room locations in New York City, Boston, and Georgetown, and a warehouse in Brooklyn (the '**Peter Manning Business**')." (Hansen Decl. ¶ 5). Debtor PM 850 Brooklyn LLC is a New York limited liability company that "holds the warehouse lease that Peter Manning uses for its inventory storage and distribution operations." (Hansen Decl. ¶7). On August 19, 2026, Peter Manning filed a voluntary Subchapter V small business reorganization case. (Dkt. No. 1). On August 31, 2026, PM 850 Brooklyn LLC filed a voluntary Subchapter V small business reorganization case. (Case No. 26-12091, Dkt. No. 1). On September 10, 2026, the Court entered an *Order Directing Joint Administration of Chapter 11 Cases*, which consolidated the two cases for procedural purposes only and which directed joint administration of the Debtors' cases under Case No. 26-12000. (Dkt. No. 27).

On October 6, 2026, the Debtors filed the Motion. The Motion argues "that in order to fully effectuate the automatic stay against the Debtors, the automatic stay must be extended to the Debtors' principal, Jeff Hansen…" (Motion ¶1). Specifically, the Debtors seek to extend the automatic stay to Mr. Hansen with respect to certain prepetition litigation against him on account of personal guarantees he gave on behalf of each of the Debtors, including, but not limited to, litigation brought by creditor Lever Style Limited (the "**Lever Style Action**"). The Debtors characterize Mr. Hansen as "effectively, the Debtors' sole proprietor…" (Motion ¶13) and assert that Mr. Hansen manages "all aspects" of their business. (Motion ¶15). Because Mr. Hansen plays an integral role in the Debtors' business, "[t]he distraction of having to defend himself personally in litigation, including the Lever Style [Action]…would be insurmountable for Mr. Hansen personally and destructive to the Peter Manning Business." (Motion ¶27).

On October 13, 2026, various parties in interest filed objections to the Motion: (i) the *Objection of 19-20 Bush Terminal Owner LP to Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**19-20 Bush Terminal Objection**") [Dkt. No. 45]; (ii) the *Verified Objection of 933 Broadway, LLC to Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**933 Broadway Objection**") [Dkt. No. 46]; and (iii) the *Wells Fargo's Objection to Debtors' Motion to Extend the Automatic Stay to Principal of the Debtors* (the "**Wells Fargo Objection**") [Dkt. No. 49]. On October 14, 2026, the United States Trustee (the "**U.S. Trustee**") filed an *Objection to Debtors' Motion to Extend the Automatic Stay to Principal of the Debtors* (the "**U.S. Trustee Objection**"). (Dkt. No. 51). That same day, Lever Style Limited ("**Lever Style**") filed *Lever Style Limited's Objection and Memorandum of Law to*

*Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**Lever Style Objection**") [Dkt. No. 53].[2]

The 19-20 Bush Terminal Objection was filed by 19-20 Bush Terminal Owner LP ("**19-20 Bush Terminal**"), the landlord under a 2017 lease agreement between Peter Manning and 19-20 Bush Terminal for certain premises located in Brooklyn (the "**19-20 Bush Terminal Lease**"). (19-20 Bush Terminal Objection ¶1). 19-20 Bush Terminal holds a guaranty executed by Mr. Hansen, "under which Mr. Hansen, as guarantor, unconditionally guaranteed the payment and performance by Peter Manning of all obligations under the [19-20 Bush Terminal] Lease (the '**19-20 Bush Terminal Guaranty**')." (*Id.* ¶4). The 19-20 Bush Terminal Lease was amended twice, and Mr. Hansen ratified and reaffirmed the 19-20 Bush Terminal Guaranty with each amendment to the 19-20 Bush Terminal Lease. (*Id.*).

On July 6, 2026, 19-20 Bush Terminal commenced a guaranty action against Mr. Hansen in his individual capacity as guarantor under the 19-20 Bush Terminal Guaranty (the "**19-20 Bush Terminal Action**").[3] Through the 19-20 Bush Terminal Action, 19-20 Bush Terminal is seeking a judgment against Mr. Hansen in the amount of $835,000.00 for, among other things: (i) holdover rent and additional rent that Peter Manning failed to pay 19-20 Bush Terminal from July 2025 through July 2026; (ii) holdover rent and additional rent that continued to accrue until Peter Manning vacated the leased premises; and (iii) 19-20 Bush Terminal's costs and attorney's fees incurred for enforcing the 19-20 Bush Terminal Guaranty. (19-20 Bush Terminal Objection ¶5).

[2] On October 13, 2026, Lever Style filed a Status Letter representing that the Debtors had consented to extend the deadline for Lever Style to serve its opposition to the Motion from October 13, 2026, to October 14, 2026, at 5:00 p.m. (Dkt. No. 44).

[3] The 19-20 Bush Terminal Action was commenced in the Supreme Court of the State of New York, Kings County and is captioned *19-20 Bush Terminal Owner LP v. Jeff Hansen*, Index No. 525045/2026.

The 19-20 Bush Terminal Objection argues the Debtors have failed to establish sufficient grounds to extend the automatic stay to Mr. Hansen. 19-20 Bush Terminal asserts that the Debtors have failed to satisfy either of the two standards courts examine when deciding whether to extend the automatic stay, the ordinary preliminary injunction standard and the immediate adverse economic consequences standard. (19-20 Bush Terminal Objection ¶9). With regards to the ordinary preliminary injunction standard, 19-20 Bush Terminal argues that "conclusory statements" about the burdens placed on Mr. Hansen in defending the Lever Style Action do not justify extending the stay as to the 19-20 Bush Terminal Action. In addition, staying the 19-20 Bush Terminal Action will arguably prejudice 19-20 Bush Terminal by "remov[ing] the only practical means 19-20 Bush Terminal has to promptly seek payment of the holdover rent and additional rent that have been accumulating, unpaid, for over a year." (19-20 Bush Terminal Objection ¶11).

With regards to the immediate adverse economic consequences standard, 19-20 Bush Terminal asserts that Mr. Hansen, as guarantor under the 19-20 Bush Terminal Guaranty, agreed that 19-20 Bush Terminal can pursue him without first pursuing Peter Manning for Peter Manning's failures to perform its obligations under the 19-20 Bush Terminal Lease. (19-20 Bush Terminal Objection ¶12). 19-20 Bush Terminal also argues that the 19-20 Bush Terminal Action would not deplete assets of the estates because Mr. Hansen expressly waived all rights of subrogation against Peter Manning, and "a contingent indemnification claim would arise prepetition and would at most be an unsecured claim affecting the pro rata distribution to creditors without damaging the estate itself." (19-20 Bush Terminal Objection ¶13). Finally, 19-20 Bush Terminal contends that the automatic stay should not be extended to Mr. Hansen because Mr. Hansen has not filed for bankruptcy himself and therefore should not be afforded

"the benefits of being a debtor in bankruptcy…without the corresponding burdens." (19-20 Bush Terminal Objection ¶14).

The 933 Broadway Objection was filed by 933 Broadway, LLC ("**933 Broadway**"), the landlord under a 2017 lease agreement between 933 Broadway and Peter Manning for certain leased premises in Manhattan (the "**933 Broadway Lease**"). (933 Broadway Objection ¶5). As with the 19-20 Bush Terminal Lease, Mr. Hansen executed a guaranty under which Mr. Hansen personally guaranteed Peter Manning's payment and performance obligations under the 933 Broadway Lease (the "**933 Broadway Guaranty**"). (933 Broadway Objection ¶7). 933 Broadway states that the Debtors are in default of their obligations under the 933 Broadway Lease and have failed to make payments since December 2024. (933 Broadway Objection ¶8). 933 Broadway asserts that the Debtors owe $891,235.03 in prepetition and postpetition obligations under the 933 Broadway Lease. (*Id.*).

As a threshold matter, 933 Broadway contends that the Debtors improperly bypassed the procedural requirements for obtaining injunctive relief by filing the Motion instead of commencing an adversary proceeding as required by Federal Rule of Bankruptcy Procedure 7001(g). (933 Broadway Objection ¶18). In addition, 933 Broadway argues that the Debtors have failed to satisfy the standard for granting a preliminary injunction under Section 105(a). For example, 933 Broadway contends that the Debtors have failed to demonstrate that there is a likelihood of successful reorganization or that the Debtors' estates will suffer irreparable harm absent the issuance of a preliminary injunction. (933 Broadway Objection ¶27). 933 Broadway also contends that the balance of harms tips in favor of 933 Broadway because, among other things, the Debtors have failed to make payments to 933 Broadway since December 2024, and the public interest weighs in favor of denying the Debtors' request for an injunction. (933

Broadway Objection ¶¶46–47). Furthermore, 933 Broadway argues that the relief requested in the Motion is "impermissibly overbroad" because the Motion seeks to extend the automatic stay as to any actions that have been brought or might be brought against Mr. Hansen to collect under the various guarantees he executed "without identifying the guarantees, the creditors holding them, or the amounts at issue." (933 Broadway Objection ¶50). According to 933 Broadway, if the Court were to grant the relief requested, it should be limited to only the Lever Style Action because that is the only action the Debtors specifically address in the Motion. (*Id.*).

The Wells Fargo Objection was filed by Wells Fargo Bank, National Association ("**Wells Fargo**"). On October 12, 2026, Wells Fargo commenced a foreclosure action against Mr. Hansen with respect to certain real property located at 32 Scotline Drive, Sagaponack, New York 11962 (the "**Wells Fargo Action**").[4] (Wells Fargo Objection ¶1). On October 7, 2021, Mr. Hansen and Peter Manning executed a promissory note (the "**Note**") in favor of Wells Fargo for a loan from Wells Fargo to Peter Manning in the amount of $1,350,000.00 (the "**Wells Fargo Loan**"). (Wells Fargo Objection ¶10). Additionally, that same day, Silvia Rodriguez a/k/a Silvia Hansen and JHH Capital Management, Inc. each executed commercial guarantees in favor of Wells Fargo, both of which guaranteed Peter Manning's and Mr. Hansen's performance and obligations under the Note. (Wells Fargo Objection ¶12). On October 13, 2021, Mr. Hansen and Silvia Rodriguez a/k/a Silvia Hansen executed a mortgage in favor of Wells Fargo in the amount of $1,350,000.00 (the "Mortgage"). (Wells Fargo Objection ¶11). The Mortgage encumbers the real property in Sagaponack, New York described above. (*Id.*). Wells Fargo did not list Peter

[4] The Wells Fargo Action was commenced in the Supreme Court of the State of New York, County of Suffolk and is captioned *Wells Fargo Bank, National Association v. Jeffrey H. Hansen, et al.*, Index No. 630158/2025.

Manning as a defendant in the Wells Fargo Action because Peter Manning is not a mortgagor on the Mortgage. (Wells Fargo Objection ¶1).

As a preliminary matter, Wells Fargo did not take a position on the Debtors' request to extend the automatic stay to Mr. Hansen with respect to litigation arising out of the guarantees, (Wells Fargo Objection ¶3), because Mr. Hansen did not execute a guaranty in connection with the Wells Fargo Loan. (Wells Fargo Objection ¶22). However, to the extent that the Debtors sought to extend the automatic stay to Mr. Hansen in relation to the Wells Fargo Action, Wells Fargo did object and argued that the Debtors failed to demonstrate that Mr. Hansen was entitled to an extension of the automatic stay under either the "unusual circumstances" test or the requirements for a preliminary injunction under Section 105(a). (Wells Fargo Objection ¶23).

The U.S. Trustee argues that the Debtors have failed to demonstrate that the automatic stay should be extended to Mr. Hansen because the potential "distraction" of the Lever Style Action is not a basis for extending the stay. (U.S. Trustee Objection at 5). The U.S. Trustee also argues that the Debtors' request for a temporary injunction of the Lever Style Action "calls upon [the Court] to impermissibly and involuntarily alter relationships between non-debtors without their consent." (U.S. Trustee Objection at 7–8). Finally, the U.S. Trustee argues that the Debtors have failed to satisfy the traditional requirements for obtaining a preliminary injunction. (U.S. Trustee Objection at 8).

The Lever Style Objection asserts that Lever Style is the Debtors' largest trade creditor and is owed $1,142,375.11, not including interest, fees, and costs, for apparel goods that Peter Manning sold and has ultimately failed to pay for. (Lever Style Objection at 1). On November 29, 2022, Mr. Hansen executed "an irrevocable and unconditional personal guarantee of that debt…" and "Mr. Hansen promised to pay as if he was the principal obligor, immediately on

demand, without set-off or counterclaim (the '**Lever Style Guaranty**')." (*Id.*) (internal quotations omitted). On June 30, 2023, Lever Style commenced the Lever Style Action in the United States District Court for the Southern District of New York.[5] (Lever Style Objection at 6). The District Court closed fact discovery on April 30, 2026. (*Id.*). On October 2, 2026, Lever Style filed its motion for summary judgment as to the claims against Mr. Hansen, seeking the full amount of the debt plus prejudgment interest and costs for breach of contract and promissory estoppel. (Lever Style Objection at 7).

Lever Style argues that an extension of the automatic stay to Mr. Hansen with respect to the Lever Style Action is not warranted because the Debtors have failed to satisfy the preliminary injunction standards. Specifically, Lever Style argues that completing the summary judgment process will not impact Mr. Hansen's work on behalf of the Debtors, especially since fact discovery is closed and because briefing on the summary judgment motion was scheduled to be concluded by November 13, 2026.[6] (Lever Style Objection at 10-11). According to Lever Style, Mr. Hansen has not "identif[ied] any business task that preparing his summary judgment opposition will prevent, any revenue it will jeopardize, or any supported reorganization proposal that it will derail." (Lever Style Objection at 11–12). Furthermore, Lever Style asserts that the

---

[5] The Lever Style Action was commenced in the United States District Court for the Southern District of New York and is captioned *Lever Style Limited v. Peter Manning LLC*, No. 1:23-cv-05616-ALC-HJR.

[6] On September 18, 2026, the District Court entered an Order Granting Lever Style's Motion for Extension of Time, which extended the briefing schedule for Lever Style's motion for summary judgment by one week. The Order required the motion for summary judgment to be filed by October 2, 2026, the opposition brief to be filed by October 30, 2026, and the reply to be filed by November 13, 2026. *Lever Style Ltd. v. Peter Manning LLC*, No. 1:23-cv-05616-ALC-HJR, Dkt. No. 118 (S.D.N.Y. Sep. 18, 2026). On October 20, 2026, after Lever Style filed its objection to the Motion, and prior to this Court's entry of the Interim Order which stayed the Lever Style Action, the District Court entered an Order further extending the briefing schedule. The briefing on the motion for summary judgment is now scheduled to conclude by November 30, 2026. *Id.* at Dkt. No. 121 (S.D.N.Y. Oct. 20, 2026).

Debtors have failed to demonstrate a likelihood of reorganization because: (i) the Debtors have no balance sheet or cash flow statement; (ii) the Debtors' Monthly Operating Report shows ending cash in the amount of $45.28 and overdraft fees; (iii) the Debtors' cash collateral authority expires on November 15, 2026; and (iv) the Debtors have failed to demonstrate how a plan would be funded or confirmed. (Lever Style Objection at 12). Lever Style also contends that the Debtors will not suffer irreparable harm if the Lever Style Action is permitted to proceed because the summary judgment process is scheduled to conclude "imminently." (*Id.*). Lever Style further argues that the balance of harms weighs in their favor because staying the Lever Style Action would only delay Lever Style's efforts to recover on its claim, while the harm to Mr. Hansen is minimal because the litigation is at the summary judgment stage. (Lever Style Objection at 12–13). Finally, Lever Style argues that extending the automatic stay to Mr. Hansen would not serve the public interest because such relief would allow a debtor's owners to escape personal litigation and there is a public interest in enforcing personal guarantees. (Lever Style Objection at 13).

In addition to their argument that the Debtors have failed to satisfy the preliminary injunction standard, the objecting parties make several other arguments as to why the automatic stay should not extend to Mr. Hansen. For instance, Lever Style argues that this Court's holding in *In re Nuovo Ciao-Di LLC* indicates that the automatic stay should not be extended to a non-debtor guarantor. (Lever Style Objection at 14). Additionally, Lever Style contends that the Debtors have failed to demonstrate that the estate will suffer any "immediate adverse economic consequence" if the automatic stay is not extended to Mr. Hansen, and that the Debtors' argument that Mr. Hansen will be distracted by the Lever Style Action is insufficient to support an injunction of the Lever Style Action. (Lever Style Objection at 16–17, 19).

On October 19, 2026, the day before the Hearing, the Debtors filed the *Debtors' Reply Memorandum in Further Support of Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**Reply**"). (Dkt. No. 58). Much of the Reply is focused on the arguments raised in the Lever Style Objection. First, the Debtors argue that Lever Style incorrectly asserts that opposing Lever Style's summary judgment motion will not take time away from the Debtors' business. (Reply ¶10). Additionally, the Debtors argue that Mr. Hansen will still need to dedicate significant time to the Lever Style Action once the summary judgment process is completed. (Reply ¶¶11–14). Furthermore, the Debtors state that Lever Style's arguments that the Debtors have not shown a likelihood of reorganization are "misleading, misguided, and legally irrelevant at any rate." (Reply ¶20). To support this assertion, the Debtors stress that their case is only a few months old and that any challenges the Debtors might be facing at this stage in the bankruptcy do not warrant a conclusion that the Debtors will be unlikely to reorganize. (Reply ¶26).

In the Reply, the Debtors argue for the first time that Mr. Hansen will be indemnified by Peter Manning for any judgment entered against Mr. Hansen in the Lever Style Action. (Reply ¶29). To support this assertion, the Debtors attach to the Reply the *Second Amended and Restated Limited Liability Company Agreement of Peter Manning LLC* (the "**Peter Manning Operating Agreement**"), which arguably contains an indemnification clause. Therefore, according to the Debtors, the estate will be irreparably harmed if the Lever Style Action were permitted to proceed. (*Id.*). Furthermore, the Debtors contend that the balance of harms does not weigh in favor of Lever Style because the Motion only seeks to extend the stay until the Debtors are able to confirm a plan in these Subchapter V cases or one or both of their cases is converted to a Chapter 7 case. (Reply ¶35). Finally, the Debtors contend that the requested relief, which

only seeks a limited stay, serves the public interest because the public has an interest in successful reorganizations. (Reply ¶36).

On October 20, 2026, the Court held a hearing on the Motion. During the Hearing, Lever Style requested that the Court strike the Reply because it was filed the night before the Hearing. In the alternative, Lever Style requested that the Court permit the objecting parties the opportunity to file sur-replies to the Reply. The Court denied Lever Style's request to strike the Reply and allowed the objecting parties to file sur-replies by October 23, 2026.

At the conclusion of the Hearing, the Court took the Motion under advisement and temporarily extended the automatic stay imposed by section 362 to Mr. Hansen until the Court issued a final ruling on the Motion.

On October 21, 2026, the Court entered an Interim Order, which memorialized the Court's ruling at the Hearing. Specifically, the Interim Order temporarily extended the automatic stay imposed by Section 362 to Mr. Hansen "including, but not limited to, with respect to any and all deadlines or further activity in the following currently-pending actions: (a) the action entitled *Lever Style Limited v. Peter Manning LLC*, No. 1:23-cv-05616-ALC-HJT, pending in the United States District Court for the Southern District of New York ('**Lever Style Action**'); (b) the action entitled *19-20 Bush Terminal Owner LP v. Jeff Hansen*, Index No. 525045/2026, pending in the New York State Supreme Court, Kings County ('**19-20 Bush Terminal Action**'); and (c) the action entitled *Wells Fargo Bank, National Association v. Jeffrey H. Hansen, et al.*, Index No. 630158/2025 pending in the New York State Supreme Court, Suffolk County ('**Wells Fargo Action**')."[7]

[7] The Lever Style Action, the 19-20 Bush Terminal Action, and the Wells Fargo Action are collectively herein referred to as the "**Actions**."

On October 23, 2026, the parties filed various sur-replies: (i) *Sur-Reply in Support of 19-20 Bush Terminal Owner LP's Objection to Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**19-20 Bush Terminal Sur-Reply**") [Dkt. No. 60]; (ii) *Lever Style Limited's Sur-Reply in Further Objection to Debtors' Motion to Extend the Automatic Stay to Principal of the Debtors and in Response to Debtors' Reply Memorandum* (the "**Lever Style Sur-Reply**") [Dkt. No. 61]; (iii) the *Wells Fargo's Sur-Reply in Response to Debtors' Reply Memorandum in Further Support of Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**Wells Fargo Sur-Reply**") [Dkt. No. 62]; and (iv) the *Sur-Reply of 933 Broadway, LLC in Further Opposition to Debtors' Motion to Extend the Automatic Stay to Principals of the Debtors* (the "**933 Broadway Sur-Reply**") [Dkt. No. 64].

These four sur-replies repeat many of the arguments raised in the objections, but the sur-replies filed by Lever Style, Wells Fargo, and 933 Broadway all also argue that the indemnification clause in the Peter Manning Operating Agreement does not indemnify Mr. Hansen because the indemnification clause only concerns actions that Mr. Hansen might have taken as a member, officer, or director of Peter Manning, not liability arising out of actions taken in his personal capacity. (Lever Style Sur-Reply at 10; Wells Fargo Sur-Reply ¶¶30–31; 933 Broadway Sur-Reply ¶8).

## III. DISCUSSION

### A. EXENSION OF THE AUTOMATIC STAY TO A NON-DEBTOR PURSUANT TO 11 U.S.C. § 362

Section 362 of Title 11 of the United States Code (the "Bankruptcy Code") provides one of the most critical protections to debtors—the automatic stay. *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). The filing of a bankruptcy petition triggers the automatic stay under Section 362. *See In re Fogarty*, 39 F.4th 62, 71 (2d

Cir. 2022) ("It is undisputed that, under Section 362, Fogarty's bankruptcy filing…triggered an automatic stay."). The significance of the automatic stay to a bankruptcy case is underscored by the fact that "[t]he scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or property of the bankruptcy estate." *Feltman v. Wells Fargo Bank, N.A. (In re TS Emp., Inc.)*, 597 B.R. 494, 533 (Bankr. S.D.N.Y. 2019) (quoting *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014)); *see also* 3 COLLIER ON BANKRUPTCY ¶362.03 (16th ed. 2026) ("The stay of section 362 is extremely broad in scope and…applies to almost any type of formal or informal action taken against the debtor or the property of the estate."). For example, Section 362(a)(1) provides that the filing of a bankruptcy petition "operates as a stay…of the commencement or continuation…of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced…" before the filing of the petition. 11 U.S.C. § 362(a)(1).

Generally, the automatic stay applies only to debtors. *See Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 408 (S.D.N.Y. 2007). However, the United States Court of Appeals for the Second Circuit has held the protections afforded by the automatic stay under Section 362 can be extended to non-debtors, but "only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003). Such claims may include "a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant…" *Id.* at 287–88 (internal citations and quotations omitted).

This Court has followed these guidelines and granted an extension of the automatic stay to non-debtor parties in limited circumstances. For example, in *Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, the debtor, Hal Luftig Co., sought an extension of the automatic stay to non-debtor individual Mr. Hal Luftig—the debtor's sole shareholder, director, and CEO—as well as injunctive relief staying the defendant from enforcing a final award and judgment against Mr. Luftig that had been awarded in an arbitration proceeding commenced by the defendant against the debtor and Mr. Luftig for breach of contract and fiduciary duty. *Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, Case No. 22-11617 (JPM), Adv. Proc. No. 22-01176 (JPM), 2023 Bankr. LEXIS 19, at *4 (Bankr. S.D.N.Y. Jan. 5, 2023). The arbitrator had found that the debtor Hal Luftig Co. and Mr. Luftig were jointly and severally liable to the defendant for the final award and judgment, which was confirmed by the United States District Court for the Southern District of New York. *Id.*

This Court granted Hal Luftig Co.'s motion to extend the automatic stay that applied to Hal Luftig Co. to Mr. Luftig, thus staying the defendant's efforts to enforce the final judgment and award against Mr. Luftig. *Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *14. The Court found that an extension of the automatic stay to Mr. Luftig was warranted because Mr. Luftig was entitled to be indemnified by Hal Luftig Co. for any amounts he was obligated to pay to satisfy the final judgment and award, which indemnification "would result in a claim against the estate, frustrating [Hal Luftig Co.'s] efforts to confirm a plan and successfully reorganize." *Id.* at *12 (citing *Durr Mech. Constr., Inc. v. I.K. Constr. Inc. (In re Durr Mech. Constr., Inc.)*, 604 B.R. 131, 137 (Bankr. S.D.N.Y. 2019)).

Additionally, the Court found that there was "such identity" between Hal Luftig Co. and Mr. Luftig that Hal Luftig Co. could be said to be the "real party defendant," and enforcement

and collection of the final award and judgment could have an "immediate adverse impact on [Hal Luftig Co.'s] reorganization efforts." *Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *12 (citing *Queenie* at 287–88). Of particular importance to the Court was the fact that Mr. Luftig was the president and sole shareholder of Hal Luftig Co., as well as one of its three employees. *Id.* at *13. Given the nature of Hal Luftig Co.'s business as a developer, presenter, and promoter of Broadway shows, Hal Luftig Co.'s business and reorganization were "largely depend[ent] on Mr. Luftig's ability to produce shows and pursue new opportunities." *Id.* Enforcement of the final judgment and award against Mr. Luftig would therefore "reduce" Mr. Luftig's capacity to work on Hal Luftig Co.'s current projects and generate new business. *Id.*

Finally, the Court found that an extension of the automatic stay to Mr. Luftig was warranted because Mr. Luftig's liability was a result of a breach of contract between Hal Luftig Co. and the defendant, not his personal conduct. *Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *14. Therefore, Mr. Luftig's liability was "derivative of his status as director of [Hal Luftig Co.]" *Id.*

In another case, this Court denied a motion to extend the automatic stay and declined to provide injunctive relief to six non-debtor guarantors in *In re Nuovo Ciao-Di LLC*. *In re Nuovo Ciao-Di LLC*, Case No. 23-10068, 2023 WL 6202467, at *57 (Bankr. S.D.N.Y. Sep. 22, 2023). In *Nuovo Ciao*, the debtor, Nuovo Ciao-Di, LLC, sought to extend the automatic stay to six non-debtor guarantors (five individuals and one LLC) and enjoin a creditor's state court lawsuit against the six non-debtor guarantors. *Id.* at *2. The Court found that an extension of the automatic stay to the six non-debtor guarantors under the facts of that case was not warranted "because the [l]awsuit [would] have minimal, if any, impact on [Nuovo Ciao's] reorganization efforts." *Id.* at *5. In comparing the facts to those in *Hal Luftig Co.*, the Court noted that the various responsibilities related to Nuovo Ciao's reorganization would be spread among five

people, none of the guarantors would be indemnified by Nuovo Ciao, and none of the individual guarantors were "synonymous" with Nuovo Ciao. *Id.* The Court also found that Nuovo Ciao was not the "real party defendant" in the state court lawsuit because the guaranty extended by the guarantors "create[d] separate liability" such that "[e]xtending the stay to the non-debtors would eliminate the entire function of the [g]uaranty." *Id.*

Here, the Court finds that the facts and circumstances of this case are more analogous to *Hal Luftig* than *Nuovo Ciao*, and the Court will therefore grant the motion to extend the automatic stay to Mr. Hansen as to the Actions. For example, similar to *Hal Luftig*, Mr. Hansen is "effectively, the sole proprietor of the Peter Manning Business," and he manages all aspects of, and plays an integral role in, the Peter Manning Business. (Hansen Decl. ¶8). The Peter Manning Business is comprised of only three full-time managers, one of whom is Mr. Hansen. (Hansen Decl. ¶12). One other manager oversees production, while the third manager is responsible for managing the Peter Manning website. (*Id.*). Other than Mr. Hansen and the other two managers, Peter Manning has no full-time employees. (Hansen Decl. ¶13).[8]

In addition, like Mr. Luftig, Mr. Hansen "oversee[s] all aspects of the Peter Manning Business, including product development, production, marketing, and operations, in addition to the company's website, warehouse and retail locations." (Hansen Decl. ¶¶10, 12). For most days of the week, Mr. Hansen is physically present in Peter Manning's New York store, working and assisting customers. (Hansen Decl. ¶18). Mr. Hansen is also physically present at Peter Manning's Brooklyn warehouse at least once a week and visits Peter Manning's Boston and Washington, D.C. stores twice a month. (*Id.*). The demands of the business require Mr. Hansen

[8] Peter Manning does engage part-time shop associates and warehouse workers, but they are engaged only as consultants, not employees. (Hansen Decl. ¶13). Peter Manning also engages a part-time graphic designer. (Hansen Decl. ¶12).

"to be on call 7 days a week…" (Hansen Decl. ¶17). Consequently, for Mr. Hansen, "[r]unning the Peter Manning Business is a full-time commitment…" (Hansen Decl. ¶16).

Because Mr. Hansen plays a central and critical role in "oversee[ing] all aspects of the Peter Manning Business…," the success of Peter Manning as a business and, as a consequence, the success of its reorganization are dependent on Mr. Hansen's ability to manage and operate that business. *See Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *13. If the various actions are permitted to proceed against Mr. Hansen, he will be forced to defend himself against the Actions and "reduce his efforts for…" the Peter Manning Business. *See id.* Therefore, the time and effort Mr. Hansen would spend defending himself against the Actions instead of managing and operating the Peter Manning Business would undoubtedly have an "immediate adverse economic consequence" on Peter Manning's estate. *See Queenie*, 321 F.3d at 287. This warrants an extension of the automatic stay to Mr. Hansen under section 362(a) with respect to the Actions until a plan is confirmed or the Debtors' cases are dismissed or converted.[9]

Many of the objecting parties have stressed that the guarantees or, in the case of Wells Fargo, the mortgage executed by Mr. Hansen were done so in his personal capacity, rather than as a result of his status as a member, officer, or director of the Debtors. Therefore, the objecting parties argue that Mr. Hansen is not indemnified by the Debtors for any potential losses and is not entitled to an extension of the automatic stay. Furthermore, some of the objecting parties

[9] On November 17, 2026, the Debtors filed the *Plan of Reorganization for a Small Business Under Subchapter V of Chapter 11 of the Bankruptcy Code Filed by Peter Manning LLC Dated November 17, 2026* (the "**Plan**"). (Dkt. No. 78). Article VI of the Plan proposes to extend the automatic stay to Mr. Hansen "until the earliest of the time the Chapter 11 case is closed, dismissed, or the discharge is granted or denied." (Plan at 18). The issue of whether to extend the stay to Mr. Hansen for the duration of the Debtors' case is not currently before the Court. Therefore, the Court will not opine on the issue, as the relief sought in the Motion is only to extend the automatic stay until a plan is confirmed or the cases are converted or dismissed.

argue that this Court's decision in *Nuovo Ciao* forecloses the possibility of extending the automatic stay to a non-debtor guarantor.

The Debtors argue that Mr. Hansen is indemnified by Peter Manning, supporting an extension of the automatic stay. The Debtors assert that Section 4.7 of the Peter Manning Operating Agreement "expressly provides for Mr. Hansen to be indemnified where, as here, he is exposed to liability as a result of his ownership of Peter Manning and the duties he performs running its business." (Reply ¶32). The Debtors argue that creditors like Lever Style, 19-20 Bush Terminal, and Wells Fargo sought guarantees or, in the case of Wells Fargo, mortgages from Mr. Hansen "precisely because he is the Member, Manager, and an officer of Peter Manning and holds substantially all of its equity." (*Id.*). Therefore, the Debtors assert that Mr. Hansen would be indemnified for any judgment and legal fees incurred in those Actions under Section 4.7 of the Peter Manning Operating Agreement. (*Id.*).

The Debtors also argue that the facts in *Nuovo Ciao* are distinct from those at issue here. Specifically, the Debtors argue that in *Nuovo Ciao,* the Court declined to extend the automatic stay to the non-debtor guarantors because the five non-debtor guarantors "collectively shared responsibility for running aspects of the nonexistent property business" while Mr. Hansen is solely responsible for the Peter Manning Business, "making all strategic and operational decisions without whose attention and work, the Debtor's business will surely founder." (Reply ¶25).

Whether Mr. Hansen is indemnified by Peter Manning for his liability in the Actions is just one factor in the analysis and is not dispositive on the issue of whether to extend the automatic stay. Here, Section 4.7 of the Peter Manning Operating Agreement does appear to indemnify Mr. Hansen against judgments and attorney's fees incurred for proceedings in which

he was made a party as a result of his status as a manager, member, and officer of Peter Manning. However, Section 3.10 of the Peter Manning Operating Agreement, which specifically governs guarantees and contributions, also states that a member who guarantees any obligations on behalf of Peter Manning will be indemnified by the other members of Peter Manning.

At this time, it is not yet clear to the Court whether Mr. Hansen would be indemnified by Peter Manning for any judgments and attorney's fees spent on the Actions. While the guarantees and mortgage were executed in Mr. Hansen's personal capacity, the Court agrees with the Debtors that creditors would seek such assurances from Mr. Hansen, and he would be willing to provide them, because of his role as a manager, member, and officer of Peter Manning. Therefore, under Section 4.7 of the Peter Manning Operating Agreement, it appears that Mr. Hansen may be indemnified by Peter Manning. However, Section 3.10 may also be applicable because Mr. Hansen executed these guarantees and the mortgage on behalf of Peter Manning. Because Mr. Hansen is the 99.9% member of JH1 Brands LLC, which is the sole member of Peter Manning, this section may have no impact because there are no other members of Peter Manning to indemnify Mr. Hansen. Accordingly, because it is not yet clear whether Mr. Hansen would be indemnified by Peter Manning for his liability in the Actions, the Court finds that this factor is neutral at this time.

Regarding *Nuovo Ciao*, the objecting parties who argue that the holding under the facts of that case forecloses the extension of the automatic stay to non-debtor guarantors are mistaken. While the Court noted that the guaranty executed by the non-debtor guarantors created a "separate liability," the Court also explained at great length that an extension of the automatic stay was not warranted because, under the facts there, the "[l]awsuit [would] have minimal, if any, impact on the [d]ebtor's reorganization efforts." *In re Nuovo Ciao-Di LLC*, 2023 WL

6202467, at *5. Here, Mr. Hansen's defense of the Actions would be at the expense of his ability to manage and operate the Peter Manning Business and would have an immediate adverse economic impact on the Debtors' reorganization.

Accordingly, the Court grants the Debtors' motion to extend the automatic stay to Mr. Hansen under Section 362(a) with respect to the Actions until such time that the Debtors confirm a plan or that the cases are converted or dismissed.

**B. INJUNCTIVE RELIEF**

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Second Circuit has not articulated a particular standard for obtaining a preliminary injunction under Section 105(a). *See The Roman Cath. Diocese of Rockville Ctr., New York v. Ark320 Doe, et al. (In re Roman Cath. Diocese of Rockville Ctr., New York)*, 651 B.R. 622, 650 (Bankr. S.D.N.Y. 2023) (citing *Calpine Corp.*, 365 B.R. at 409). Some courts within this Circuit have decided motions to extend the automatic stay under Section 105(a) without applying the traditional preliminary injunction requirements under Rule 65. *See McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008). Other courts, including this Court, have applied the traditional preliminary injunction requirements under Rule 65 when determining whether to impose a preliminary injunction under Section 105(a). *See Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *15.

Before discussing whether the Debtors have demonstrated that a preliminary injunction is warranted under Section 105(a), the Court will first address the objection that the Debtors are seeking injunctive relief through a motion rather than an adversary proceeding. Federal Rule of Bankruptcy Procedure 7001, which lists various types of adversary proceedings, specifically

provides that an action seeking injunctive relief must be brought by an adversary proceeding. Fed. R. Bankr. P. 7001(g). However, "not every technical violation of a rule is a basis to deny relief." *In re Parlement Techs., Inc.*, 661 B.R. 722, 728 (Bankr. D. Del. 2024). Federal Rule of Civil Procedure 61, made applicable to this bankruptcy case by Federal Rule of Bankruptcy Procedure 9005, requires the Court to "disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

Here, none of the objecting parties argued that their rights were impacted by the Debtors' decision to seek the requested relief by motion rather than by adversary proceeding. In fact, at the Hearing, the Court allowed the objecting parties the opportunity to attempt to explain how their rights may have been adversely affected by the Debtors' choice to procced through a motion rather than an adversary proceeding, and none of the parties demonstrated or argued any prejudice to their substantive rights. (*See* Hr'g Audio at 11:22 a.m.) Furthermore, during the Hearing, the Court offered the parties the opportunity to take discovery in connection with the Motion, but none of the parties have sought such discovery. (*See* Hr'g Audio at 11:21 a.m.) The objecting parties only requested an opportunity to file sur-replies to the Debtors' Reply, which the Court granted. Therefore, the Court will not deny the requested relief solely because the Debtors proceeded by motion rather than by an adversary proceeding. *See In re Parlement Techs., Inc.*, 661 B.R. at 728 (denying motion to extend the automatic stay to non-debtors but finding that "it is certainly not obvious that, in the absence of a claim of inadequate notice, the Court would deny an otherwise meritorious motion for a preliminary injunction on the ground that it was sought by motion rather than by adversary proceeding").

The Debtors' Motion does not request that the Court evaluate the traditional requirements for obtaining a preliminary injunction, but rather seeks injunctive relief under the general

principles of Section 105(a). Regardless, the objecting parties have based many of their arguments on the Debtors' failure to satisfy the traditional requirements. Accordingly, the Court will evaluate whether the Debtors have satisfied the traditional requirements for obtaining a preliminary injunction under Federal Rule of Civil Procedure 65.

A party seeking a preliminary injunction under Rule 65 must demonstrate the following: (1) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits of their claims to make those claims "a fair ground for litigation and a balance of hardships tipping decidedly in the [party's] favor"; (2) whether the party will likely suffer irreparable harm in the absence of a preliminary injunction; (3) whether the balance of equities tips in the party's favor; and (4) whether the preliminary injunction is in the public's interest. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 78–80 (2d Cir. 2010)). Courts in the Second Circuit have modified these four factors in the bankruptcy context. *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009). Accordingly, the Court examines the following four factors to determine whether to grant injunctive relief and extend the automatic stay to Mr. Hansen: "(1) whether there is a likelihood of a successful reorganization; (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction." *Id.*

As to the first factor, the likelihood of a successful reorganization, courts have determined that "[a] chapter 11 case 'may be considered likely to succeed so long as the prospects of reorganization remain viable and if the Debtors are substantially more likely to reorganize with the injunction in place.'" *SVB Fin. Grp. v. UBS Sec. LLC, (In re SVB Fin. Grp.)*,

Case No. 23-10367 (MG), Adv. Proc. No. 23-1091 (MG), 2023 WL 2962212, at *7 (Bankr. S.D.N.Y. Apr. 14, 2023) (quoting *In re Purdue Pharms. L.P.*, 619 B.R. 38, 59 (S.D.N.Y. 2020)). When a debtor seeks a preliminary injunction at the beginning of their Chapter 11 case, courts tend to "afford the debtor the benefit of the doubt so long as the case is generally on track." *Id.; see also Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *16.

Here, the Debtors' cases are less than three months old, and, while the Motion was pending, the Debtors timely filed their Plan.[10] Some of the objecting parties argue that the Debtors' Monthly Operating Report for the month of August indicates that the Debtors' likelihood of reorganization is slim. However, at this point in the Debtors' cases, the Court has no reason to believe that the Debtors will be unable to reorganize, especially because the Debtors are entering the "holiday season, during which a larger percentage of the Peter Manning Business' revenues are generated." (Hansen Decl. ¶ 20). Accordingly, the Court finds that the Debtors have established a likelihood of reorganization. *See Hal Luftig Co.*, 2023 Bankr. LEXIS 19, at *16 (finding the debtor has demonstrated a likelihood of reorganization when the debtor has complied with the requirements of Chapter 11, Subchapter V and the Court has no reason to conclude that the debtor will be unable to reorganize).

Regarding the second factor, irreparable harm, bankruptcy courts in the Second Circuit have imposed an injunction "where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to the case before it." *Lyondell Chem. Co.*, 402 B.R. at 590 (citing *Alert Holdings, Inc. v. Interstate Protective Servs., Inc., (In re Alert Holdings, Inc.)*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992)).

[10] Pursuant to 11 U.S.C. § 1189(b), the Debtors were required to file a plan no later than 90 days after the order for relief entered. The Debtors filed the Plan on November 17, 2026, exactly 90 days after the order for relief entered in debtor Peter Manning's case. (Dkt. No. 78.)

The party seeking an injunction must demonstrate "that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects..." *Id.* (quoting *Alert Holdings, Inc.*, 148 B.R. at 200).

As discussed *supra* in Section III.A, the Peter Manning Business and reorganization are dependent on Mr. Hansen's ability to manage and operate the business. If the Actions were permitted to proceed against Mr. Hansen during this critical period, Mr. Hansen's ability to manage the business would inevitably be impacted, certainly to the detriment of the Peter Manning Business.

Some courts have found the distraction of litigation against non-debtors alone does not sufficiently demonstrate "irreparable harm" warranting an injunction. *In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. at 664. However, other courts have found that the distraction of litigation against non-debtors, when counterbalanced by a debtor's "clear showing that they have a reasonable likelihood of success," demonstrates that the reorganization process would be "irreparably harmed" without an injunction. *Id.* (citing *SVB Fin. Grp.*, 2023 WL 2962212, at *7–8). Accordingly, given that the Debtors have demonstrated their likelihood to reorganize at this point in the case, the distraction of the Actions against Mr. Hansen would irreparably harm the Debtors' reorganization, weighing in favor of granting injunctive relief.

The third factor, the balance of harms, also weighs in favor of granting a preliminary injunction. As discussed above, Mr. Hansen's defense of the litigation would reduce his efforts to manage and operate the Peter Manning Business and would inevitably harm the Debtors' reorganization. In comparison, the harm the objecting parties face is at best minimal because the Debtors are only seeking an injunction of the Actions until the Debtors confirm a plan or, if they

are unable to confirm a plan, until their cases are dismissed or converted. The Actions may be delayed, but only the Lever Style Action was ripe for decision. In fact, the 19-20 Bush Terminal Action was only commenced in July 2026 while the Wells Fargo Action was commenced last month. Therefore, when comparing the harm the Debtors' reorganization will suffer if the Actions are permitted to proceed to the harm the creditors will suffer if the Actions are delayed, it is clear the balance of harms weighs in favor of granting the injunction.

Finally, because the Actions will only be enjoined for a short period, the Court finds that issuing an injunction will serve the public interest. As a threshold matter, the public has an "interest in successful reorganizations, since reorganizations preserve value for creditors and ultimately the public." *SVB Fin. Grp.*, 2023 WL 2962212, at *11 (quoting *In re Caesars Ent. Operating Co., Inc.* 561 B.R. 441, 453 (Bankr. N.D. Ill. 2016)). However, as some of the objecting parties have argued, there is a public interest in enforcing guarantees like those executed by Mr. Hansen. In analyzing this factor, the Court must balance the public's interest in the Debtors' successful reorganization with that of the objecting parties' rights to collect under the guarantees they hold. *See Calpine Corp.*, 365 B.R. at 413.

As stated above, the Actions will only be delayed until the Debtors confirm a plan or until their cases are dismissed or converted. Therefore, because the Actions will only be enjoined for that period of time, the Court determines any public interest concerns regarding the enforcement of the guarantees will be minimized. *See Lyondell Chem. Co.*, 402 B.R. at 593–94 (finding an injunction of 60 days minimizes any "interference with the 'sanctity' of guaranties").

Accordingly, the Court finds the Debtors have satisfied the requirements for a preliminary injunction under Section 105(a) and will enjoin the Actions until the Debtors have confirmed a plan or until their cases have been dismissed or converted.

## IV. CONCLUSION

Based on the foregoing, the Debtors' Motion is **GRANTED**. Pursuant to 11 U.S.C. § 105(a), the automatic stay that applies to the Debtors under Section 362(a) is extended to Mr. Jeff Hansen as to the Actions until the Debtors confirm a plan or until their cases have been dismissed or converted.

The Debtors shall submit a proposed order consistent with the rulings set forth herein.

Dated: November 25, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE